# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RODNEY MARSHALL,

        Petitioner,      :      Case No. 3:14-cv-170

  - vs -                          District Judge Thomas M. Rose
                                Magistrate Judge Michael R. Merz

RHONDA RICHARD, Warden,
  Madison Correctional Institution

                          :

        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Petition (ECF No. 2), the Return of Writ (ECF No. 24), and the Reply (ECF No. 27).

Marshall is committed to Respondent Richard's custody upon his conviction in the Montgomery County Common Pleas Court for grand theft, theft, breaking and entering, receiving stolen property, burglary, having weapons while under disability, and engaging in a pattern of corrupt activity.  He pleads three grounds for relief:

> **Ground One:**  Trial judges abused their discretion and authority by denying both a pre-sentence and a post-sentence motion to withdraw plea, while violating defendant's due process, while creating conflicts of interest by allowing conflicts of interest to exist, and showing acts of bias ultimately demonstrating a manifest injustice.
>
> **Ground Two:**  The defendant's counselors were gravely insufficient.  The guilty plea is void.  It was coerced, unconstitutional, and it violates the defendant's due process.

1

> **Ground Three:** Prosecutor misconduct and vindictive prosecution because of conflicts of interest violated defendant's constitutional rights.

(Petition, ECF No. 2, PageID 6, 8, 9.)

**Procedural History**

Marshall was indicted on thirty-four counts of theft related offenses on February 13, 2008 (Indictment, State Court Record, ECF No. 10-1, PageID 156, et seq.)  In August 2008 the grand jury added a charge of engaging in a pattern of corrupt activity.  *Id.*  at PageID 171.  On September 22, 2008, the day before trial was to begin, Marshall's counsel filed a Notice of Conflict of Interest based on the fact that the victims in Counts 14 and 15 were, respectively, Cynthia Heck and Matthew Heck, spouse and son of Montgomery County Prosecutor Mathias H. Heck, Jr.[1] *Id.* at PageID 175.  Having changed counsel, Marshall on January 9, 2009, withdrew "all arguments raised regarding a conflict of interest by the Honorable Judge Cynthia Heck and the Vandalia Municipal Court."  (Entry, ECF No. 10-1, PageID 180.)  At the time of these proceedings, the Honorable Cynthia M. Heck was judge of the Vandalia Municipal Court, a court with bindover authority under Ohio law.

Also on September 23, 2008, Marshall pled guilty to eighteen of the thirty-five counts (including the new charge) and agreed to a sentence of between eight and twelve years imprisonment (Transcript, ECF No. 10-3, PageID 769, et seq.)  He indicated he was satisfied with the representation he had received. *Id.*  at PageID 777.  He told Judge Froelich that no other promises had been made to him other than dismissal of seventeen counts, a sentencing range of eight to twelve years, and termination of the post-release control he was then serving. *Id.*  at PageID 778.  He repeated that representation after the charges had been read. *Id.*  at PageID 798.  Before accepting

---

[1] The Notice incorrectly alleges Prosecutor Heck is himself named as a victim.

2

the pleas, Judge Froelich asked Marshall "is there anything that you do not understand, or do you have any questions of me or of your lawyer about anything I have said or about anything that's going on here today?" to which Marshall responded "no." Judge Froelich took the guilty pleas and found they were knowing, intelligent, and voluntary. *Id.* at PageID 802.

Before sentencing, on October 7, 2008, Marshall moved to withdraw the guilty pleas. The trial court (Judge Jeffrey Froelich) conducted a hearing on that motion in January 2009 at which Marshall and his mother testified. Marshall claimed that attorney Saunders had told him he would have a hearing on his motions to suppress and conflict of interest after he signed the pleas. *Id.* at PageID 826. He claims Saunders told him in open court that his motions had been denied. *Id.* at PageID 827. Having pled guilty to each of the charges individually, he claimed at the hearing that he was innocent. *Id.* at PageID 844. He explained that he thought he would get a suppression hearing after his guilty plea. He eventually claimed that the answers he gave during the plea colloquy were not truthful. *Id.* at PageID 861. Lisa Jewett, Marshall's mother, testified she had never been present when attorney Saunders and Marshall discussed a motion to suppress. *Id.* at PageID 872

After the hearing, Judge Froelich denied the motion and then imposed a ten-year sentence. Noting that Marshall had pled guilty in other felony cases, he did not accept Marshall's claim that he did not understand what was going on, explicitly finding Marshall was not credible (Decision, State Court Record, ECF No. 28, Exh. 13, PageID 1141).[2] Marshall appealed, asserting abuse of discretion in the denial of the motion to withdraw, but the Second District Court of Appeals affirmed. *State v. Marshall*, 2009-Ohio-5746, 2009 Ohio App. LEXIS 4831 (2nd Dist. Oct. 20, 2009). Marshall did not appeal to the Supreme Court of Ohio.

On January 27, 2010, Marshall moved to reopen his direct appeal, asserting appellate counsel was ineffective in failing to raise two assignments of error. The Second District denied reopening.

---

[2] The State Court Record has recently been re-filed to comply with the Court's Standing Order for bookmarking of complex document filings.

3

*State v. Marshall*, No C.A. 23243 (2nd Dist. June 1, 2010)(unreported; copy at ECF No. 28, Exh. 21, PageID 1291 et seq.)  Marshall again failed to appeal to the Supreme Court.  While the 26(B) application was pending, Marshall filed another motion in the trial court to withdraw his guilty plea. *Id.* at Exh. 22, PageID 1296.  The trial court[3] denied the motion and Marshall did not appeal.  While that motion was pending, Marshall filed a motion for resentencing to correct an error in the imposition of post-release control.  The trial court entered a *nunc pro tunc* correction and Marshall again appealed.  The Second District dismissed on *res judicata* grounds and Marshall again did not appeal to the Ohio Supreme Court.

On May 18, 2011, Marshall filed his third motion to withdraw guilty plea.  The trial court denied relief and Marshall appealed to the Second District, raising five assignments of error.  That court again affirmed. *State v. Marshall*, No. CA 25329 (2nd Dist. May 17, 2013)(unreported; copy at ECF No. 28-1, Exh. 42, PageID 1577, et seq.  The Supreme Court declined jurisdiction. *Id.* at Exh. 46, PageID 1612.  After Marshall filed his Petition here, the Court denied Respondent's motion to dismiss for lack of exhaustion and stayed the case so that Marshall could pursue a delayed direct appeal to the Ohio Supreme Court (ECF No. 19).  That court denied relief on August 24, 2015, and this Court lifted the stay (ECF No. 23).

## ANALYSIS

**Ground One:**

In his first Ground for Relief, Marshall pleads:

> Trial judges abused their discretion and authority by denying both a pre-sentence and a post-sentence motion to withdraw plea, while violating defendant's due process, while creating conflicts of

---

[3] By this time, Judge Connie Price, who succeeded to this case when Judge Froelich became a judge of the Second District Court of Appeals.

4

>   interest by allowing conflicts of interest to exist, and showing acts
>   of bias ultimately demonstrating a manifest injustice.

As pled, this claim is a confusing mixture of state law and federal law claims. The Ohio law standard for reviewing in the Ohio Court of Appeals a decision on a motion to withdraw a guilty plea is whether the trial judge abused his or her discretion. But that is a state law question and federal habeas corpus courts can only decide questions of federal constitutional law. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). A claim that a state court judge has abused his or her discretion is not a claim under the Constitution; abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Underneath the abuse of discretion claim, Marshall seems to be making a claim that his guilty plea was not knowing, intelligent, and voluntary. Although he does not say that explicitly, as a *pro se* litigant he is entitled to a liberal construction of his pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

The Constitution does require that a guilty plea be knowing, intelligent, and voluntary. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

5

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady*, 397 U.S. at 755.  In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The identical standard applies to a plea of no contest or nolo contendere. *See Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

The plea colloquy transcript in this case shows that Judge Froelich exceeded the standards required for taking a guilty plea under Ohio R. Crim. P. 11.  As Judge Froelich later

said, it was a true colloquy between him and Marshall. The elements of the offenses, the maximum penalties, and the rights being waived were all explained. Beyond the oral colloquy, the relevant matter was covered in the written plea documents and Marshall affirmed that he had his GED.

Marshall says, however, that he thought he was going to have hearings on his motion to suppress and his motion to dismiss because of the asserted conflict of interest after he pled guilty and that attorney Saunders had led him to believe this. By the time of the hearing on the first motion to withdraw, Saunders had been replaced and Judge Froelich noted that he could be called as a witness to what he had told Marshall, who was by then represented by a new attorney. Saunders was not called and Marshall's mother did not corroborate his claims.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.* Judge Froelich had himself conducted the plea colloquy and then heard the witnesses as the motion to withdraw hearing. He was patient and thorough during the colloquy and allowed new counsel ample time to deal with the motion to withdraw hearing. He was in the best position to determine Marshall's credibility and simply did not believe that Saunders had misled him.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), this Court must accept findings of historical fact by the state courts unless their error is shown by clear and convincing evidence. 28 U.S.C. § 2254(e).

7

Marshall has not met that standard and his claim that his guilty pleas were not knowing, intelligent, and voluntary should therefore be dismissed.

Marshall's claim of conflict of interest in his First Ground for Relief should also be dismissed. A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Whether it would have been constitutional for Matt Heck's office to continue to prosecute Marshall when two of his victims were alleged to have been Mr. Heck's spouse and son became a moot point when Marshall pleaded guilty.

A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975). "[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012). After entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent nature of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012). A guilty plea constitutes a break in the chain of events leading up to it. *Tollett v. Henderson*, 411 U.S. 258 (1973). Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266.

Marshall's claim that Judge Froelich or Judge Price or indeed any of the appellate judges

8

who heard his case were biased against him is mere rhetorical window dressing. No evidence of any bias or prejudice has been presented.

Finally, apart from the merits of Ground One, the claims made are procedurally defaulted because Marshall did not take a timely direct appeal to the Ohio Supreme Court. His motion for delayed direct appeal which essentially was insisted on by the Attorney General's Office in this case as a matter of exhaustion, does not excuse his failure to appeal in a timely manner. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)

**Ground Two: Ineffective Assistance of Counsel**

In his Second Ground for Relief, Marshall claims he received ineffective assistance of counsel. Marshall begins his argument in this section of his Petition by stating "[t]he fact that the Defendant hired three separate defense counselor's in the pre-trial phase of this case should raise red flags right away."[4] (ECF No. 2, PageID 33.) Marshall writes as if any claim he has about how his attorneys handled the case can be raised in federal habeas corpus.

He spends three pages complaining about what attorney Dennis Gump did or did not do in the pre-trial stages of the case. Much of what he writes is about conversations with Gump, but none of these are in the record. When considering habeas corpus claims, the federal court is limited to what was before the state courts. *Cullen v. Pinholster,* 563 U.S. 170 (2011). Moreover, any claims about Gump's failure to provide effective assistance are barred by Marshall's valid and binding guilty pleas.

Marshall next turns to attorney Saunders (Petition, ECF No. 2, PageID 36-43). Again,

---

[4] In addition to retained counsel, the record indicates at least two attorneys were appointed to represent him at various points in time.

9

much of what is written here is not reflected in the written state court record and cannot be considered (e.g., Saunders' alleged failure to appear for the arraignment on the B indictment). Marshall's statements about what Saunders said to him about the plea are only reflected in Marshall's testimony at the plea withdrawal hearing, which Judge Froelich found not credible.

Marshall spends additional time in this portion of his Petition discussing the conflict of interest issue, asserting that Mr. Heck and his office were barred altogether from participating in the case. As with other pre-plea claims, these claims are barred by Marshall's guilty pleas.

In the portion of the Petition complaining about his third hired attorney, John Rion, he asserts Rion put things in the supplement to the motion to withdraw plea that he did not agree to, such as withdrawing the claims about conflict with Judge Heck. However, the record shows that the Chief Justice of the Ohio Supreme Court replaced Judge Heck for purposes of the bindover in Marshall's case and thus there was no conflict arising from that situation. Mr. Rion could not ethically assert a position that had no basis in law or fact, regardless of what Marshall wanted.

Marshall asserts that John Rion also represented him on appeal and "had plenty of issues that he could have used on the Defendant's behalf that would have likely resulted in a reversal on appeal. The fact that Counsel Rion did not also constitutes "ineffective assistance of counsel." (ECF No. 2, PageID 46.) He does not say what those issues might have been. The method Ohio law requires to be used to raise claims of ineffective assistance of appellate counsel is the application to reopen the direct appeal. Marshall filed such an application, alleging his guilty pleas should not have been accepted and Judge Froelich should have imposed a five-year term of post-release control (Application, ECF No. 28, Exh. 20, PageID 1265, 1268). The Second District found Rion did not provide ineffective assistance of appellate counsel by failing to raise those assignments of error. *State v. Marshall*, No. CA 23243 (2nd Dist. June 1, 2010)(unreported,

copy at ECF No. 28, Exh. 21, PageID 1291, et seq.)  As noted above, Marshall failed to appeal to the Ohio Supreme Court and thus procedurally defaulted on this claim of ineffective assistance of appellate counsel.

Therefore Ground Two for Relief should be dismissed with prejudice.

**Ground Three:  Prosecutorial Misconduct and Vindictive Prosecution**

In this Third Ground for Relief, Marshall asserts he is the victim of prosecutorial misconduct and vindictive prosecution.  He restates his conclusions about the conflict of interest, but cites no authority for the proposition that a prosecutor commits misconduct under the Constitution when he presents to the grand jury an indictment in which members of his family are named as victims.  Even if this were unconstitutional, it is an error waived by the guilty pleas.

He also claims it is obvious that indicting him on thirty-five counts is vindictive, but the grand jury found probable cause as to all thirty-five and Marshall pled guilty to eighteen, including the collective offense of engaging in a pattern of corrupt activity.

Marshall uses the phrase "vindictive prosecution," but he may be trying to claim selective prosecution.  In order to prove even a prima facie case of selective prosecution, a defendant must show "that similarly situated individuals [of a different race] were not prosecuted." *United States v. Armstrong,* 517 U.S. 456, 465 (1996), *citing Ah Sin v. Wittman*, 198 U.S. 500 (1905).  These claims usually arise in a racial context, but to apply them in this case, Marshall would have to show that other Montgomery County residents who were indictable on thirty-five theft-related counts where the victims did not include the prosecutor's spouse and son were not indicted,

whereas he was.  Nothing like evidence to this effect is in the record.

The Third Ground for Relief is without merit and should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 24, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).